## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TRACY WALKER**                                    **CIVIL ACTION**

**VERSUS**                                          **NO.  10-4586**

**N. BURL CAIN, WARDEN**                            **SECTION  "A"(4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.      Factual Background**

The petitioner, Tracy Walker ("Walker"), is a convicted inmate incarcerated in the Louisiana State Penitentiary at Angola, Louisiana.[2]  On September 9, 1999, Walker was indicted by a Grand Jury in Tangipahoa Parish with the second degree murder of his estranged wife, Alice Walker.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 5.

[3]St. Rec. Vol. 5 of 8, Indictment, 9/9/99.

The record reflects that, around 6:00 p.m. on the evening of August 14, 1999, Alice Walker arrived at the trailer home of her estranged husband, Tracy Walker, to pick-up their two children who had spent the day with him.[4]  The children were sent to sit in Alice's van, which was parked in the driveway, while the couple argued on the porch.  According to the testimony of the oldest child, S.W., who was ten years old at the time, Walker pushed Alice down the steps and began beating her.  He then pulled her up the steps into the trailer.

Once inside the trailer, Walker shot Alice twice, in her chest and in her abdomen.  These wounds resulted in her death.

Walker called 911 and requested that someone come quickly to help, but Alice died before assistance arrived.  In his 911 call, Walker stated that he and his wife had been arguing and, as they struggled, a gun went off.  The responding officers noticed a bleeding scratch on Walker's face, and according to the autopsy report, Alice had fresh contusions on her scalp.

Walker admitted in his statement to police after he was taken into custody that the gun went off as he and his wife struggled.  He denied that he intentionally shot her and stated that he could not remember any details as to how the accident occurred.  His defense at trial was that Alice's death was caused by the accidental discharge of the gun as the couple struggled.

Walker was tried before a jury on April 10 through 12, 2001, and he was found guilty as charged.[5]  After hearings held June 15 and 18, 2001, the Trial Court denied Walker's motions for new

---

[4]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  St. Rec. Vol. 2 of 8, 1st Cir. Opinion, 2002-KA-0150, pp. 2-3, 6/21/02; *State v. Walker*, 826 So.2d 1196 (La. App. 1st Cir. 2002) (Table).

[5]St. Rec. Vol. 1 of 8, Trial Minutes, 4/10/01; Trial Minutes, 4/11/01; Trial Minutes, 4/12/02; St. Rec. Vol. 6 of 8, Trial Transcript, 4/10-12/01; Jury Verdict, 4/10-12/01; St. Rec. Vol. 7 of 8, Trial Transcript (continued), 4/10-12/01; St. Rec. Vol. 8 of 8, Trial Transcript (continued), 4/10-12/01.

trial and for post-verdict judgment of acquittal.[6]  The Court thereafter sentenced him to serve life in prison without benefit of parole, probation, or suspension of sentence.[7]

On direct appeal, Walker's counsel raised two assignments of error:[8] (1) the Trial Court erred in denying the motion to suppress evidence seized during the warrantless search of his residence; and (2) he received ineffective assistance of counsel where trial counsel failed to object to the statements concerning other bad acts evidence elicited by the prosecutor from S.W.

Walker also filed a *pro se* supplemental brief in which he raised the following assignments of error:[9] (1) the State was allowed to introduce other bad acts testimony that was irrelevant and which was introduced without proper notice; (2) unrecorded bench conferences prevented a fair trial and full appellate review; (3) the Trial Court erred in accepting a juror who had a predetermination of petitioner's guilt; (4) the Trial Court failed to examine the minor child witness in compliance with the requirements of La. Rev. Stat. Ann. § 15:469; (5) the prosecutor's indirect reference to Walker's failure to testify mandates reversal of the conviction; (6) he received ineffective assistance of counsel where trial counsel refused to allow Walker the right to testify on his own behalf; and (7) he was denied effective assistance of counsel where counsel failed to object or move for mistrial when the prosecutor made an indirect reference to Walker's failure to testify.

---

[6]St. Rec. Vol. 1 of 8, Hearing Minutes, 6/15/01; Sentencing Minutes, 6/18/01; St. Rec. Vol. 8 of 8, Motion Hearing Transcript, 6/15/01; Sentencing Transcript, 6/18/01; St. Rec. Vol. 6 of 8, Motion for Post-Verdict Judgment of Acquittal, 5/23/01; Motion for New Trial, 6/11/01.

[7]St. Rec. Vol. 1 of 8, Sentencing Minutes, 6/18/01; St. Rec. Vol. 8 of 8, Sentencing Transcript, 6/18/01.

[8]St. Rec. Vol. 2 of 8, Appeal Brief, 2002-KA-0150, 2/19/02; St. Rec. Vol. 2 of 5, 1st Cir. Opinion, 2002-KA-0150, 6/21/02.

[9]St. Rec. Vol. 2 of 8, Supplemental Appeal Brief, 2002-KA-0150, 3/18/02.

On June 21, 2002, the Louisiana First Circuit Court of Appeal affirmed Walker's conviction and sentence.[10]  The Court held that Walker waived the following claims for lack of contemporary objection to preserve the claims for review: (1) counsel's assignment two and pro se assignment one regarding the introduction of evidence of other bad acts elicited from S.W., also refusing to consider the related ineffective assistance of counsel claim on direct appeal; (2) pro se assignment two regarding unrecorded bench conferences; (3) pro se assignment three regarding the acceptance of an allegedly biased juror; and (4) pro se assignments five and seven regarding reference to his failure to testify. The Court further found no merit in the remaining four claims presented by counsel and Walker.  The Court also denied Walker's request for rehearing on August 21, 2002.[11]

On September 17, 2009, Walker's counsel filed a writ application with the Louisiana Supreme Court arguing only one claim, that the Trial Court erred in denying his motion to suppress.[12]  Walker thereafter submitted a supplemental brief in which he raised the other eight claims raised by him and counsel on direct appeal.[13]  On March 21, 2003, the Louisiana Supreme Court denied the application without stated reasons.[14]  Walker's conviction became final 90 days later, on June 19, 2003, when he did not file a writ of certiorari with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510,

---

[10]St. Rec. Vol. 2 of 8, 1st Cir. Opinion, 2002-KA-0150, 6/21/02; *State v. Walker*, 826 So.2d 1196 (La. App. 1st Cir. 2002) (Table).

[11]St. Rec. Vol. 2 of 8, 1st Cir. Order, 2002-KA-0150, 8/21/02; Application for Rehearing, 6/29/02.

[12]St. Second Suppl. Rec. Vol. 1 of 1, La. S. Ct. Writ Application, 02-K-2398, 9/19/02 (postmarked 9/17/02); St. Rec. Vol. 2 of 8, La. S. Ct. Letter, 2002-K-2398, 9/19/02 (showing postmark 9/17/02); Rec. Doc. No. 5-1, p. 2, 5.

[13]Although the state failed to file a copy of this pleading, Walker has filed a purported copy as an attachment to his federal petition.  Rec. Doc. No. 5-1, p. 25.

[14]*State v. Walker*, 840 So.2d 547 (La. 2003); St. Rec. Vol. 1 of 8, La. S. Ct. Order, 2002-K-2398, 3/21/08; Rec. Doc. No. 5-1, p. 2, 5.

513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered

in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.    **State Procedural Background**

The record reflects that, on December 7, 2004, the Trial Court appointed counsel to represent

Walker "for his post-conviction relief petition."[15]  The record provided by the State does not contain

a copy of an application for post-conviction relief predating this hearing.

In his federal petition, Walker also alleges that he filed an application of post-conviction relief

on March 8, 2004.[16]  An unfiled copy of an application for post-conviction relief dated March 4, 2004,

is attached to his federal petition.[17]  In that application, Walker raised three grounds for relief: (1) he

was denied effective assistance of counsel when counsel failed to object to the other crimes statements

elicited from S.W.; (2) he was denied effective assistance of counsel where counsel refused to allow

him to testify; and (3) he was denied effective assistance of counsel where counsel failed to object or

move for mistrial when the district attorney indirectly referenced his failure to testify.

On April 26, 2007, Walker's appointed counsel filed a first amending and supplemental

application in which he raised the following grounds for relief:[18] (1) his right to a fair trial was

violation where the State failed to produce examination results of fingerprints present on the pistol and

lulled the defense into believing that an examination was requested or conducted by the crime

laboratory thereby depriving the defense an opportunity to seek an independent examination for

exculpatory evidence; and (2) he was denied effective assistance of counsel where counsel failed to

---

[15]St. Rec. Vol. 1 of 8, Minute Entry, 12/7/04.

[16]Rec. Doc. No. 5, p.3 no. 11(a)(3) and p.18.

[17]Rec. Doc. No. 5-1, p. 56.

[18]St. Rec. Vol. 1 of 8, Amended Application for Post-Conviction Relief, 4/26/07.

adequately investigate, prepare and defend at trial in the following ways: (a) counsel failed to conduct an independent examination of the pistol; (b) counsel failed to subpoena and call five known witnesses; (c) counsel failed to subpoena the victim's cell phone records to establish that the victim initiated the conduct with Walker on the day of her death; (d) counsel obtained an order to view the crime scene with Walker, but failed to do so prior to trial; (e) counsel was given $1,000 by Walker's mother to hire an investigator, but failed to do so; (f) counsel failed to engage in effective examination and cross-examination of the witnesses, including the police, coroner, and crime laboratory technician; and (g) counsel failed to introduce records of the divorce proceedings which would have contradicted the prosecutor's statements that the victim sued Walker for divorce.

On September 10, 2007, Walker filed a supplemental application in which he raised the following grounds for relief:[19] (1) the Trial Court erred in denying the challenges for cause on jurors Smith, Piroux, Spangler, Conlin, Cockerham, and Garafalo; (2) the State engaged in prosecutorial misconduct when it failed to preserve useful evidence of the victim's fingerprints on the pistol which was favorable to the defense and when it lied to the jury about Walker's divorce proceedings; (3) counsel obtained an invalid waiver of Walker's right to testify through coercion, deceit, and misrepresentation; and (4) counsel was ineffective where he failed (a) to have the bench conferences recorded, (b) to obtain the initial police report, (c) to obtain the report where the pistol was reported stolen, (d) to obtain witnesses to attest to the report of the stolen pistol, (e) to request that the Trial Court order the State to test the weapon for fingerprints, (f) to request that the Trial Court have the State test the suspected marijuana and crack pipe found on the victim, and (g) to object to the State's reference to Walker's failure to testify.

---

[19]St. Rec. Vol. 1 of 8, Supplemental Application for Post-Conviction Relief, 9/10/07 (dated 9/4/07).

Walker returned to the Trial Court on May 22, 2008, to file another supplemental application in which he reurged his argument that the Trial Court violated La. Code Crim. P. art. 843 when it failed to record the bench conferences at trial.[20]

At a hearing held November 14, 2008, the Trial Court denied relief finding that Walker's post-conviction claims were in part procedurally barred by La. Code Crim. P. art. 930.4(C) for raising claims that could have been and inexcusably were not raised on direct appeal.  Specifically, the court imposed this bar on both claims 1 and 2 in the counsel-filed amended application filed April 26, 2007 and on claims 1, 2 and 4(a)-(f) in Walker's *pro se*-filed supplemental application filed September 10, 2007.  The Court also found Walker's remaining claims of ineffective assistance of counsel to be without merit.[21]

On June 29, 2009, Walker sought timely[22] review of the Trial Court's order in the Louisiana First Circuit.[23]  His writ application raised four grounds for relief: (1) the Trial Court erred in barring consideration of his post-conviction claims on procedural grounds; (2) the Trial Court erred in failing to have the bench conferences recorded during trial and in denying the defense challenges for cause on jurors Smith, Piroux, Spangler, Conlin, Cockerham, and Garafalo; (3) the Trial Court erred in

---

[20]St. Rec. Vol. 3 of 8, Second Supplemental Application for Post-Conviction Relief, 5/22/08.

[21]St. Rec. Vol. 2 of 8, Transcript of Post-Conviction Hearing, 11/14/08; St. Rec. Vol. 1 of 8, Hearing Minutes, 11/14/08; Trial Court Order, 11/14/08.

[22]La. App. R. 4-3 grants no more than 30 days for a litigant to seek a supervisory writ from an intermediate appellate court after the district court's ruling.  *See Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001).  The Trial Court granted Walker an extension of time to file this writ application by June 30, 2009.  St. Supp. Rec. Vol. 1 of 1, Second Motion for Extension of Time, 4/30/09; Trial Court Order, 4/30/09.

[23]St. First Suppl. Rec. Vol. 1 of 1, 1st Cir. Writ Application, 2009-KW-1196, 6/30/09 (dated 6/29/09); Rec. Doc. No. 5-1, p. 157.

finding that his ineffective assistance of counsel claims[24] had no merit; and (4) the Trial Court erred in finding that the State did not commit prosecutorial misconduct through the bad faith destruction of fingerprint evidence and lying to the jury about the divorce proceedings.

On September 14, 2009, the Louisiana First Circuit denied Walker's writ application.  The court held that Walker's request for post-conviction relief was untimely, citing La. Code Crim. P. art. 930.8.[25]

Walker sought timely review of this order in the Louisiana Supreme Court.[26]  He raised the following arguments: (1) a member of the Louisiana First Circuit panel which denied him relief was also Walker's trial judge and should have recused himself; (2) his claims are not untimely under La. Code Crim. P. art. 930.8; (3) the Trial Court erred in dismissing his post-conviction claims on procedural grounds; (4) the Trial Court erred in finding no error in the trial judge's failure to have the bench conferences recorded or in denying counsel's challenges for cause as to jurors Smith, Piroux, Spangler, Conlin, Cockerham, and Garafalo; (5) the Trial Court erred in finding that the ineffective assistance of counsel claims were without merit; and (6) the Trial Court erred in finding that the prosecutor did not engage in misconduct.  The Louisiana Supreme Court denied the application without stated reasons on September 24, 2010.[27]

---

[24]These claims were that counsel failed to object to the testimony of S.W., failed to seek mistrial for the indirect reference to Walker's failure to testify, failed to have bench conferences recorded during voir dire, failed to investigate and obtain reports on the stolen pistol, failed to have the weapon tested for fingerprints, failed to request that the suspected marijuana and cocaine pipe found on victim be tested, failed to subpoena victim's cell phone records, failed to hire an investigator, and failed to introduce divorce records.

[25]St. First Suppl. Rec. Vol. 1 of 1, 1st Cir. Order, 2009-KW-1196, 9/14/09; Rec. Doc. No. 5-1, p. 189.

[26]St. Second Suppl. Rec. Vol. 1 of 1, La. S. Ct. Writ Application, 09-KH-2261, 10/16/09 (postmarked 10/13/09, dated 10/9/09); Rec. Doc. No. 5-1, pp. 191-194.

[27]*State ex rel. Walker v. State*, 45 So.3d 1068 (La. 2010); St. Second Suppl. Rec. Vol. 1 of 1, La. S. Ct. Order, 2009-KH-2261, 9/24/10; Rec. Doc. No. 5-1, p. 230.

**III.**   **Federal Petition**

On March 25, 2011, the clerk of this Court filed Walker's petition for federal habeas corpus relief in which he raised the following grounds for relief:[28] (1) the Trial Court erred in failing to have the bench conferences recording during voir dire and trial which denied him the right to a meaningful appeal and in denying the defense challenge's for cause for jurors Smith, Piroux, Spangler, Conlin, Cockerham, and Garafalo; (2) counsel was ineffective where he failed (a)(1) to object to the testimony about prior bad acts without proper notice, and (a)(2) to the testimony about other wrongs elicited from S.W. by the prosecutor, (b) failed to request a mistrial when the prosecutor made indirect reference to Walker's failure to testify, (c) to have the bench conferences recorded during voir dire, (d) to investigate and obtain the report where the pistol was reported stolen, (e) to request that the weapon be tested for fingerprints, (f) to request that the suspected marijuana and crack pipe found on the victim be tested, (g) to subpoena the victim's cell phone records, (h) to hire an investigator, and (i) to introduce the divorce records; and (3) he was denied a fair trial where the prosecutor engaged in misconduct by (a) failing to preserve fingerprint evidence and (b) by lying to the jury about the divorce proceedings.

In its response, the State argues that Walker's first claim, parts (a)(1) and (b)-(i) of his second claim, and part (a) of his third claim are in procedural default having been barred from review by the state courts for lack of contemporaneous objection under La. Code Crim. P. art. 841 and La. Code Ev. art. 103A(1) and/or as untimely filed under La. Code Crim. P. art. 930.8.[29]  The State further argues,

---

[28]Rec. Doc. No. 2.

[29]*See* Rec. Doc. Nos. 11, 12.  The Court has numbered the claims differently from the references actually stated in the State's response.

that parts (a)(2) of the second claim and part (b) of the third claim also were not raised in or exhausted through the state courts and can be dismissed for that reason.

Walker filed a reply to the State's opposition arguing that all of his claims were raised and exhausted through each level of the state courts.[30]  He further argues that his claims should not be considered procedurally defaulted, because the Louisiana courts erred in imposing the state procedural bars referenced by the State.

## IV.   **Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[31] applies to Walker's petition, which is deemed filed in this court under the federal mailbox rule on December 13, 2010.[32]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[30]Rec. Doc. No. 18.

[31]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[32]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Walker's federal habeas petition on March 25, 2011, when the filing fee was paid after pauper status was denied.  Walker dated his signature on the petition on December 13, 2010.  This is presumed to be the earliest date on which he could have been submitted the pleadings to prison officials for mailing.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

The State does not address the timeliness of the instant petition.  The Court nevertheless finds that, with the benefit of statutory tolling, the petition was filed within the one-year AEDPA filing period.

As noted above, the State does, however, assert that all of Walker's claims are either unexhausted or in procedural default.  It appears that the State has in part confused these two doctrines, and the Court finds through its review that all of the claims raised in this Court were exhausted either on direct appeal or through post-conviction review.

To receive federal habeas review, a petitioner need only to provide the state courts an *opportunity* to address, and if necessary, correct alleged deprivations of federal constitutional rights. 28 U.S.C. § 2254(b)(1)(A); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *Satterwhite v. Lynaugh*, 886 F.2d 90, 92 (5th Cir. 1989); *see also*, *Duncan v. Walker*, 533 U.S. 167, 179 (2001) ("The exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment."); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.").  A thorough review of the state court record demonstrates that Walker did present each of his claims to the appropriate state courts.  How the state courts choose to resolve, or bar, review of those claims does not necessarily equate to a failure to meet the exhaustion requirement. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  The State's exhaustion defense in this case is rejected.

The Court will address the defendants' procedural default defense, which will provide a basis for the dismissal of Walker's petition.

## V.   <u>Procedural Default</u>

As outlined in detail previously in this Report, Walker has raised each of the claims presented to this Court in a state court proceeding.  Specifically, one of his ineffective assistance of counsel arguments raising counsel's failure to object to S.W.'s testimony about other bad acts (Claim No. (2)(a)), was raised by counsel on direct appeal to the Louisiana First Circuit.  That Court declined to review this claim on direct appeal, and instead deferred to post-conviction review with the possible assistance of an evidentiary hearing.[33]

Walker raised this claim again in his application for post-conviction relief filed in 2004.  He also raised all of the other claims now before this federal court in that same post-conviction proceeding either in the original or supplemental and amending applications presented to the state trial court, as previously and specifically outlined in this Report.  In other words, all of the claims now before this federal court were raised by Walker in his state application for post-conviction relief (as amended).  Initially, the Trial Court denied the application at the hearing held November 14, 2008.  The Trial Court barred the unfair trial and ineffective assistance of counsel claims, pursuant to La. Code Crim. P. art. 930.4(c), and found that the remaining *pro se* raised ineffective assistance of counsel claims were without merit.

Upon seeking review of this ruling in the Louisiana First Circuit, the Court denied the application on September 14, 2009, for seeking untimely post-conviction relief under La. Code Crim. P. art. 930.8.[34]  The Louisiana Supreme Court acquiesced to this ruling, the last reasoned decision,

---

[33]St. Rec. Vol. 2 of 8, 1st Cir. Opinion, 2002-KA-0150, p. 7-8, 6/21/02.

[34]At the time, La. Code Crim. P. art. 930.8 provided a two-year period for a defendant to file for post-conviction relief in the state courts.

when it denied Walker's subsequent writ application without stated reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman*, 501 U.S. at 731-32; *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

This Court must consider whether the bar to review relied upon by the Louisiana courts prohibits consideration of the claim on federal habeas corpus review.

A.      **Independent and Adequate State Grounds**

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, __U.S.__, 131 S.Ct. 1120, 1127 (2011); *Glover*, 128 F.3d at 902. A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a

13

federal claim in some cases but not others." *Beard v. Kindler*, __U.S.__, 130 S. Ct. 612, 618 (2009). The question of the adequacy of a state procedural bar is itself a federal question. *Beard*, 130 S. Ct. at 617 (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).

In this case, the basis for the state courts' bar to review was the state procedural requirements under La. Code Crim. P. art. 930.8 regarding the timing for seeking post-conviction relief. The United States Fifth Circuit Court of Appeals held in *Glover* that denial of relief premised on the untimeliness of a claim under Article 930.8 "is sufficient to fulfill the independence requirement" of the procedural default doctrine. *Glover*, 128 F.3d at 902. The same is true in this case. The Louisiana First Circuit's ruling, as conceded by the Louisiana Supreme Court, was clear and express in its reliance on Article 930.8 to deny Walker's writ application. The bar was therefore based in state law and independent of Walker's underlying federal claims.

A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Glover*, 128 F.3d at 902; *Duncan v. Cain*, 278 F.3d 537, 541 (2002); *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir.1997) (in order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule). A federal habeas court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.

14

*Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts do not honor that bar.  *Accord Davis v. Johnson*, No. 4:00CV684-Y, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied).  Where such foundation and basis do exist, the bar stands.  It is not within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy.  *Lee v. Cain*, No. 03-2626, 2004 WL 2984274 at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim).

Relevant to this case, the Fifth Circuit has squarely held that, because "Louisiana courts have regularly invoked [article 930.8] to bar untimely claims," it is an "adequate" procedural rule, i.e., it "is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims."  *Glover*, 128 F.3d at 902 (citing *Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989); *Johnson v. Miss.*, 486 U.S. 578, 587 (1988); and *Amos*, 61 F.3d at 339); *Pineyro v. Cain*, 73 Fed. App'x 10, 11 (5th Cir. 2003).

Because the Louisiana courts' decision rested on an independent and adequate state rule of procedural default, this court may not review Walker's claims.

### B.   <u>Cause and Prejudice</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

In this case, Walker has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  The Court's review of the record and Walker's reply to the State's opposition does not support a finding that any factor external to the defense prevented Walker from raising the claims in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.

*Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Walker's claims are therefore procedurally barred from review by this federal habeas corpus court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[35]

## C.    Fundamental Miscarriage of Justice

Walker may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

---

[35]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte.  *Id.*

Walker does not present any indication and the record contains nothing that suggests his actual innocence on the underlying conviction. His claims address alleged procedural failings in the criminal proceedings, and not his actual innocence. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. He has failed to overcome the procedural bar to his claims. The claims are procedurally barred and can be dismissed with prejudice for that reason.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Tracy Walker's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[36]

New Orleans, Louisiana, this 22nd day of September, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[36]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

18